```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JUAN BELLIARD, on behalf of himself and all   :
others similarly-situated,                    :
                                              :
                              Plaintiffs,     :   MEMORANDUM & ORDER
                                              :
              -against-                       :   14-cv-03495 (ENV) (ST)
                                              :
KORYEO INTERNATIONAL CORP., and               :
STEVE HONG, in his professional and individual :
capacities                                    :
                                              :
                              Defendants.     :
------------------------------------------------------------- x
```

VITALIANO, D.J.

  Juan Belliard commenced this action against his former employer, Koryeo International Corp. ("Koryeo"), and its president, Steve Hong, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Opt-in plaintiffs Marvin Lopez, Primitivo Espinal and Geraldo Lora later filed consent forms to join in a collective action. Plaintiffs bring claims for (1) unpaid overtime, pursuant to 29 U.S.C. § 207(a) and NYLL § 160; (2) minimum wage compensation, pursuant to 29 U.S.C. § 206(a) and NYLL § 652(1); and (3) defendants' failure to furnish plaintiffs with wage statements, pursuant to NYLL § 195(3). Complaint, Dkt. No. 1. Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, their motion is granted in part and denied in part.

Background

  The following facts are drawn from the pleadings, Local Rule 56.1 filings and evidentiary submissions. The facts are construed, as they must be in the summary judgment context, in the light most favorable to the non-movant. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007).

1

Koryeo is an importer and distributor of Asian food products. Defendants' Statement of Material Facts in Support of Their Motion for Summary Judgment ("SOF"), Dkt. No. 85, ¶ 1. Its core business is the purchase and distribution of food products to customers in New York, New Jersey, Connecticut and Pennsylvania. SOF ¶ 5. Hong is Koryeo's president. SOF ¶ 2. There is no dispute that Belliard, Espinal, Lora and Lopez all worked for Koryeo at various times. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls. Opp."), Dkt. No. 89, at 5-7. Metropolitan New York City was the nerve center for Koryeo's operations. Koryeo maintained a main warehouse in Brooklyn until March 31, 2015, when it moved to New Jersey. SOF ¶ 3-4.

To staff operations, Koryeo hired drivers and driver's helpers who effected the delivery of its products. SOF ¶ 6. As certainly would be expected, defendants contend that the drivers' "primary responsibility" was to drive Koryeo's trucks to customers and distributors. SOF ¶ 7. At least some of these trucks weighed more than 17,900 pounds and were registered with the United States Department of Transportation. SOF ¶ 10-11; Declaration of Steve Hong ("Hong Decl."), Dkt. No. 87, at Ex. A; Plaintiffs' Counter-Statement of Undisputed Facts ("CSOF"), Dkt. No. 90, at ¶ 10.[1]

Defendants contend that the "primary responsibilities" of driver's helpers included various safety-related activities intended to assist the drivers with "secur[ing] the product inside the trucks, deliver[ing] the products to the customer with drivers as well as assisting drivers with directions, [and] acting as a second set of eyes and ears for the driver." SOF ¶ 7-8. Plaintiffs

---

[1] References to the paragraph numbers of plaintiffs' counter-statement of facts are to the responses included below the corresponding fact drawn from defendants' statement of material facts.

2

dispute that claim and contend that driver's helpers were responsible only for transporting food products from the trucks to the customers. CSOF ¶ 8. But, most significantly, defendants note that driver's helpers off-loaded trucks along their routes, *see* Hong Decl. ¶¶ 8, 30, thus engaging in activities that directly affected the weight distribution on the trucks at each stop after the trucks left the warehouse to distribute products to customers.

There appears to be agreement that, ordinarily, plaintiffs and other Koryeo employees worked from 8 A.M. to 6 P.M., with a 30-minute lunch break, totaling 47.5 hours of time per week. SOF ¶ 13. Plaintiffs state that they occasionally worked before or after those times; that is, they worked more than 47.5 hours per week. CSOF ¶ 13. To track time, defendants used a punch-card system. SOF ¶ 14. When employees worked the standard 47.5 hours per week, this was noted on Koryeo's payroll records. SOF ¶ 15. When employees worked a non-standard number of hours, the difference was also noted and pay was recalculated accordingly. SOF ¶ 17; CSOF ¶ 17.

Obviously, the parties dispute whether plaintiffs were paid any overtime premium for work performed beyond the standard hours. But, the dispute is not as straightforward as the words might suggest. In fact, defendants contend that the amount plaintiffs were paid when they worked 47.5 hours included "overtime" pay for standard hours exceeding 40 hours per week.[2] SOF ¶ 18; CSOF ¶ 18. Plaintiffs maintain that they were salaried, rather than hourly, workers. At the same time, however, plaintiffs understood that if they worked more or less than 47.5 hours per week – for instance, because they were late, sick or absent – their pay would not be the same

---

[2] Defendants assert that they were not required to pay plaintiffs overtime but paid the equivalent of overtime anyway for all hours exceeding 40 hours per week. Defendants' Memorandum of Law in Support of Their Motion Pursuant to Fed. R. Civ. P. 56 For Summary Judgment ("Defs. Mem."), Dkt. No. 84, at 1.

3

as if they had worked 47.5 hours.  *See, e.g.*, Belliard Tr. 29:4-11; Lopez Tr. 4-13.  Defendants embrace this understanding as support for their argument that their payroll records corroborate that workers' pay was not a salary but was adjusted if they were absent or worked less than 47.5 hours per week.  Hong Decl. Exs. C-F.  Hong declares, moreover, that he explained the workings of this "hourly" pay structure to his employees when they began work.  SOF ¶ 21.

Like with the hours they worked and the calculation of their compensation, there is substantial agreement as to the nature of the services provided by plaintiffs as employees of Koryeo.  Specifically, Belliard worked for Koryeo from July through August 2013.  SOF ¶ 42.  He typically worked as a driver's helper once per week on average and otherwise as a warehouse employee, in which role he packaged seafood.  CSOF ¶ 54.  Yet, on any given day, Belliard could be assigned to work or travel on Koryeo's trucks.  SOF ¶ 55.  The nature of his work as a driver's helper is disputed, but, as previewed above, the parties agree that he delivered products to customers from the trucks.  CSOF ¶ 56.  As a warehouse worker, Belliard's duties also included performing safety checks on Koryeo's trucks, "palletizing products" and ensuring that Koryeo's trucks were "balanced" when they were sent out to make deliveries.  SOF ¶ 60.

Espinal was a Koryeo worker from March through August 2013.  SOF ¶ 61.  He admits that he worked as a driver's helper for a month or two during the middle of his employment but states that otherwise he worked solely in the warehouse.  CSOF ¶ 61.  Espinal's responsibilities as a driver's helper or warehouse worker were the same as Belliard's in those respective roles.  CSOF ¶ 73.

Lora worked for Koryeo from April 2013 through March 2015.  SOF ¶ 78.  He worked solely as a warehouse worker for the first seven months of his employment and then he occasionally worked as a driver's helper.  He could be assigned to work as a driver's helper at

4

any time. CSOF ¶ 99. Lora's duties were similar to Belliard's and Espinal's in those two roles.

Lopez's primary role as an employee was significantly different from that of the other plaintiffs. He worked for Koryeo from March 2007 through February 2012. SOF ¶ 22. He was, on occasion, a truck driver, SOF ¶ 22, although plaintiffs allege that "much of his employment involved duties unrelated to driving." They allege that he was a driver only once or twice per week. CSOF ¶ 22. Lopez also concedes that he made deliveries as a driver to New York, New Jersey and Connecticut customers. He claims he was otherwise was assigned to any other task required by defendants, but that these tasks included maintenance of Koryeo's trucks. SOF ¶ 40. Koryeo, Lopez admits, could assign him to drive at any time. SOF ¶ 41.

Although plaintiffs take issue with what they apparently believe are unsupported characterizations of truck travel-related responsibilities of driver's helpers, they effectively do not deny Hong's description of the work as directly connected to the operation of the company's trucks to deliver Asian food products to retail customers in four states. In giving his fulsome description of the duties of driver's helpers, Hong declares that driver's helpers are responsible for loading products on Koryeo's trucks, traveling on the trucks and unloading deliveries, assisting drivers with directions, "acting as a second set of eyes and ears" for the driver, alerting the driver to pedestrians or objects near the truck, assisting the driver with backing up the truck, pressing an emergency buzzer on the truck when need be, assisting the driver with truck inspections and reporting safety issues to management. Hong Decl. ¶¶ 31, 38, 49.

As for the wage statement claim, Hong testified that Koryeo did not issue its employees pay stubs after their first pay checks, Hong Tr. 80:6-15; 88:2-9, and never issued wage statements. Hong Tr. 88:4-25.

## Standard of Review

Implementing a bedrock rule, a federal district court must grant summary judgment when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (noting that, on summary judgment, "the court 'may not make credibility determinations or weigh the evidence'") (emphasis omitted) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed 2d 105 (2000)).

This exercise demands a critical eye. Not all facts are material. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). For a dispute over material facts to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Assertions of fact must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the motion court must resolve all ambiguities and draw all permissible factual inferences in favor of

the party opposing the motion. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Gummo v. Vill. of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994) (noting that summary judgment can be granted "only when no rational jury could find in favor of the nonmoving party").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party. The nonmoving party may not rely on "conclusory allegations or unsubstantiated speculation" to defeat summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Again, the nonmoving party can prevail by "designat[ing] specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## Discussion

I. Overtime Claims

Plaintiffs' first and third claims are brought pursuant to FLSA's and NYLL's overtime provisions. *See* 29 U.S.C. § 207(a); NYLL § 160. Under FLSA, an employee engaged in interstate commerce generally must be paid overtime (1.5 times his or her ordinary wage) for each hour worked in excess of 40 hours per week. 29 U.S.C. § 207(a). There is, however, a relevant exception to this broad rule, which provides that the overtime rule does not apply to any employee "with respect to whom the Secretary of Transportation has power to establish

qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1).[3] Section 31502 of Title 49, in turn, permits the Secretary of Transportation to prescribe qualifications for "motor carriers" and "motor private carriers." 49 U.S.C. § 31502(b). A "motor carrier" is a "person providing motor vehicle transportation for compensation" and a "motor private carrier" is a "person transporting property by motor vehicle when (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(14)-(15). Subsection (A) is fulfilled if the transportation takes place in interstate commerce. In other words, FLSA's overtime provisions do not apply to anyone who provides motor vehicle transportation for compensation or who transports his or her employer's property in interstate commerce to further a commercial enterprise.

Not surprisingly, given the broad language of the rule and the broad language of the exception, the intersection of the two has spurred considerable litigation, leading to precedential refinement of their application. So that the exception does not swallow the rule, the motor carrier exemption has been limited to work activities that "affect the safety of operation." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 553, 60 S. Ct. 1059, 1069, 84 L. Ed. 1345 (1940). In that regard, the Supreme Court has held that "[t]he fundamental test is simply that the employee's activities affect safety of operation." *Levinson v. Spector Motor Serv.*, 330 U.S. 649,

---

[3] NYLL imposes the same "exemptions" as FLSA. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of Section 13 of the Fair Labor Standards Act . . . ."); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). The same analysis, therefore, applies to plaintiffs' federal and state overtime claims.

671, 67 S. Ct. 931, 942, 91 L. Ed. 1158 (1947).  Leavening application of the test, in *Pyramid Motor Freight Corp. v. Ispass*, a companion case to *Levinson*, the Court cautioned that "the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities . . . that his activities will not come within the kind of 'loading' which . . . affects safety of operation."  *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708, 67 S. Ct. 954, 91 L. Ed. 1184 (1947).  Together, *Levinson* and *Pyramid Motor Freight* require courts to consider whether an employee's activities affect the safety of a company's operations in more than a *de minimis* capacity.

Courts in the Second Circuit "traditionally construed FLSA exemptions narrowly and against the employers asserting them," but the Supreme Court has since "made clear that we must give FLSA exemptions 'a fair (rather than a "narrow") interpretation.'"  *Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 215–16 (2d Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142, 200 L. Ed. 2d 433 (2018)).  *Encino Motorcars* does not require any change in the features to be evaluated in determining whether the exception applies, but rather encourages a more open understanding of the significance of the concern for safety.  As Supreme Court decisions have made clear, the amount of workday time spent on safety-related matters will not be determinative.  *See, e.g.*, *Morris v. McComb*, 332 U.S. 422, 433–34, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (exemption applied when 4% of employees' work involved interstate transport).  It is only where the safety-affecting duties of a worker are "so trivial, casual or occasional a part of an employee's activities . . . that his activities will not come" within the scope of the exemption.  *Pyramid Motor Freight Corp.*, 330 U.S. at 708.

To this end, courts within the Second Circuit consistently have recognized that "[w]hat

9

matters is the degree to which a worker's activities affects safety, not the amount of time the worker spends on that activity." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012). Plaintiffs argue that defendants fail to cite "any case law" holding that the motor carrier exemption can apply "simply because a small portion of [a worker's] duties might be covered." *See* Pls. Opp. at 14 n.4. But, as already highlighted, that is precisely what courts have held for over seventy years. *See, e.g.*, *Morris*, 332 U.S. at 433–34.

With this analytical framework in hand, on this record, there is no genuine dispute of material fact about the applicability of the federal motor carrier exemption to the claims of each plaintiff. Indeed, there is enough in the description of the individual duties provided by each plaintiff, himself, to reach that determination. For example, Lopez worked for Koryeo as a driver, and plaintiffs readily concede that drivers are responsible for trucks' safety. *See* CSOF ¶ 8; *see also* Declaration of Matthew A. Brown, Dkt. No. 86, at Ex. A ("Hong 30(b)(6) Tr."), at 32; *id.* at Ex. B ("Hong Tr."), at 24:10-14. Plaintiffs' argument that "much of [Lopez's] employment involved duties unrelated to driving," CSOF ¶ 22, and that he was a driver only once or twice per week, is unavailing. His job responsibilities regularly included work that plaintiffs admit affected the safety of Koryeo's motor vehicle operations. *See Am. Trucking Ass'ns*, 310 U.S. at 553. As described, such work was neither atypical nor *de minimis*. Clearly, the motor carrier exemption applies to Lopez.

Belliard, Espinal and Lora fall within the motor carrier exemption as well. The Court need not address whether, as driver's helpers, plaintiffs "acted as a second set of eyes and ears" for the driver, as much as their dispute of Hong's description defies common sense and experience. *See* Hong Decl. ¶¶ 31, 38, 49. That is because the record shows that, as a matter of

law, plaintiffs' other safety-affecting activities were not "so trivial, casual, and significant as to be de minimis." *See Pyramid Motor Freight Corp.*, 330 U.S. at 708. First, there is no dispute that plaintiffs rode on Koryeo's trucks in their role as driver's helpers. *Cf.* 29 C.F.R. § 782.4(a) (United States Department of Labor regulations defining roles within purview of motor carrier exemption) ("A [d]river's 'helper' . . . is an employee other than a driver, who is required to ride on a motor vehicle when it is being operated in interstate or foreign commerce . . . ."); *see also Walden v. Sanitation Salvage Corp.*, No. 14 Civ. 112 (ER), 2016 WL 7243547, at *5 (S.D.N.Y. Dec. 13, 2016).

Second, the work that Belliard, Espinal and Lora admit they performed substantially affected the safety of Koryeo's truck operations. Specifically, they acknowledge that they performed safety checks on Koryeo's trucks, palletized cargo, ensured that the trucks were "balanced" and made deliveries to Koryeo customers, which effectively rebalanced the cargo at each stop and enabled the driver to avoid traffic fines and safety violations. SOF ¶¶ 55, 60; CSOF ¶¶ 61, 73, 99. The activities they performed "were thus a natural, integral and apparently inseparable part" of the operation of Koryeo's trucks in its interstate distribution operations. *See Morris*, 332 U.S. at 433.

Importantly, plaintiffs also concede that, as part of their duties, they *could* have been assigned to activities they acknowledge to be "safety-related" at any time. *See, e.g.*, SOF ¶¶ 40, 55; CSOF ¶ 99. Consequently, enhanced by (1) a job qualification that required them to be ready *at any time* to assume additional safety-related assignments and by (2) their regular, non-*de minimis* assignments directly affecting the safe operation of Koryeo's trucks as they moved cargo in interstate commerce to customers in four states, plaintiffs fall under the motor carrier exemption to federal and state overtime wage laws for the entirety of their employment. *See*

11

*Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 274 (S.D.N.Y. 2008); 29 C.F.R. § 782.2(3) ("[I]f the bona fide duties of the job performed by the employee are in fact such that he is . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . , he comes within the exemption in all workweeks when he is employed at such job."); SOF ¶¶ 5, 10-11. Accordingly, there is no genuine dispute of material fact that precludes summary judgment on plaintiffs' overtime claims. Defendants' motion is, therefore, granted as to claims one and three.

II. Minimum Wage Claims

Unlike plaintiffs' overtime claims, the motor carrier exemption is not available to shield defendants from plaintiffs' minimum wage claims. As a result, defendants must demonstrate in some other way that no genuine issue of material fact exists as to whether plaintiffs were paid the minimum amount required under federal and state law for all hours worked. Three interrelated fact issues are at play: (1) whether plaintiffs were paid an hourly wage or a weekly salary; (2) whether, in any event, plaintiffs were paid at least the minimum wage for all hours worked; and (3) if plaintiffs were not paid for all hours worked, whether defendants had actual or constructive notice of that shortfall.

The record contains evidence to support plaintiffs' claim that they received only a weekly wage, *see* Pls. Opp. at 16-17, as well as defendants' claim that plaintiffs received wages that fluctuated from the standard 47.5 hours per week wage depending on the hours actually worked by an individual employee. *See* Defs. Mem. at 16-17. More specifically, Hong represented that he explained the payroll system to all new hires, *see* Hong Decl. ¶ 14, and that plaintiffs understood what they would be paid and that it accounted for a 47.5-hour workweek. Hong Decl. ¶¶ 27, 35, 45, 60. Defendants also cite their payroll records as proof that plaintiffs'

compensation was based on a wage and adjusted commensurately whenever plaintiffs were absent. *See* Hong Decl. Exs. C-F.

In counterpoint, plaintiffs testified that they understood from conversations with Hong that they were being paid a weekly salary. *See, e.g.*, Belliard Tr. 29:2-3; Lora Tr. 40:2-14. Plaintiffs characterize defendants' payroll records as non-comprehensive because they do not include the "precise hours worked each week." CSOF ¶ 108. And Plaintiffs argue that Koryeo could not have intended to paid them an hourly wage because Koryeo's own arithmetic does not add up. For example, they point out that, if Belliard were paid $7.80 per hour up to 40 hours per week and $11.71 per hour beyond that, his weekly pay would have been $399.82, rather than rounded up 18 cents per week to $400. Pls. Opp. at 16-17. Ultimately, however, although the issue of whether plaintiffs' pay was called a weekly wage or not has drawn considerable discussion from the parties, the nomenclature issue is, essentially, somewhat of a sidebar. When the smoke clears, the center of this claim is a single question; that is, regardless of what their wage payment was called, whether each plaintiff received at least the minimum wage for each hour worked.

Even with that understanding, there is still evidence cutting both ways. Lora testified at his deposition, for instance, that he was occasionally asked to work after he had already "punched out" and that a manager would sometimes ask him to come in early. Declaration of David D. Barnhorn ("Barnhorn Decl."), Dkt. No. 91, at Ex. D (Lora Dep.), at 48-49. He also submitted a declaration asserting that defendants never informed him of how many hours his "salary" was intended to cover each week. Barnhorn Decl. at Ex. H ("Lora Decl.") ¶ 3. Lopez likewise submitted a declaration that Koryeo "did not allow" him to record all of the time he

worked. Barnhorn Decl. at Ex. I ("Lopez Decl.") ¶ 2.

It is in the weighing of the evidence as to whether plaintiffs were paid the minimum hourly wage for each hour worked that the compensation nomenclature takes on renewed significance. "There is a rebuttable presumption that an employer's payment of [a] weekly salary represents compensation for [only] the first 40 hours of an employee's work week. This presumption may be rebutted by evidence that the employer and employee agreed that the weekly salary would include compensation for overtime hours." *Perez v. Merrick Deli & Grocery, Inc.*, No. 13 CIV. 5166 ILG JO, 2015 WL 4104790, at *2 (E.D.N.Y. July 8, 2015) (internal citations omitted). On the other hand, the significance of that presumption vanishes here because the Court has already found that the obligation to pay overtime is precluded by the federal motor carrier exemption. Still, what remains in play, assuming the jury were to find that plaintiffs were paid a weekly wage, is the number of hours each plaintiff had to work per week to earn that wage and what the understanding was between the parties if plaintiffs worked more or less than 47.5 weekly hours.

As to the first of these inquiries – the number of hours worked – plaintiffs devote surprisingly little attention to defendants' final argument, that they were not aware that plaintiffs worked any hours beyond what was recorded in the payroll records and therefore cannot be held liable. *See* Defs. Mem. at 20-22; *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414–15 (9th Cir. 1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [section] 207(a)."). Plaintiffs' opposition brief alleges that defendants were aware of unpaid work that Lora – and,

14

apparently, only Lora – performed. It is silent, however, as to the other three plaintiffs.[4] The failure to respond to defendants' argument is tantamount to waiver for these plaintiffs. *Johnston v. Town of Orangetown*, No. 10 CIV. 8763 GAY, 2013 WL 1189483, at *7 n.3 (S.D.N.Y. Mar. 22, 2013), *aff'd*, 562 F. App'x 39 (2d Cir. 2014) ("Plaintiff failed to respond to defendants' arguments and, thus, apparently concedes defendants' points and waives said claims."); *Felske v. Hirschmann*, No. 10 CIV. 8899 RMB, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

As concerns Lora, an employer ordinarily cannot be held liable when an employee "performs [unpaid] services about which the employer knows nothing," *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998), but once that employer "knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." *Id.* Defendants concede that a "rogue supervisor" may have caused Lora to work unpaid overtime. *See* Defs. Reply at 12. The case they cite in the hope of escaping liability is completely off point. *Schwerdtfeger v. Demarchelier Management, Inc.* addressed whether *individual employees* can be held liable for wage and hour violations – not whether employers can be held liable under FLSA for the transgressions of their employees. *See* No. 10 CIV.7557 JGK, 2011 WL 2207517, at *4 (S.D.N.Y. June 6, 2011). Defendants can be held liable if a Koryeo manager did, in fact, cause Lora to work unpaid hours.

---

[4] Even assuming that plaintiffs worked additional hours beyond the "standard" 47.5 hours Koryeo expected them to work, Belliard, Lopez and Espinal do not dispute defendants' argument that they had no knowledge of those additional hours. Defendants' Reply Memorandum ("Defs. Reply), Dkt. No. 92, at 11 n.9.

15

As to the other three plaintiffs, however, there is absolutely no evidence that their standard week (or, indeed, any week) was more than 47.5 hours. And, since plaintiffs were not entitled to overtime pay, their "built-in overtime" more than covers the minimum wage they were entitled to receive for hours worked in excess of 40 hours per week.[5]

Accordingly, summary judgment is granted to defendants for Belliard, Espinal and Lopez's minimum wage claims, and denied for Lora's minimum wage claims.

III. Wage Statement Claim

Plaintiffs' fifth and final claim alleges that defendants failed to furnish proper wage statements, pursuant to NYLL § 195(3). Defendants do not appear to contest the merits of plaintiffs' claim; Hong testified that Koryeo never issued wage statements. Hong Tr. 88:2-25; CSOF ¶ 110. Defendants instead argue that § 195(3) does not give rise to a private right of action. In support of this, defendants cite a decision from this district that relies on an unpublished Second Circuit summary order from 2004. *See* Defs. Mem. at 24; *Aryal v. Great Neck Petro. Corp.*, No. 16-cv-2621 (BMC), 2016 U.S. Dist. LEXIS 139191, at *4 (E.D.N.Y. Oct. 6, 2016) (citing *Chimarev v. TD Waterhouse Inv'r Servs., Inc.*, 99 F. App'x 259 (2d Cir. 2004)). As plaintiffs have observed, however, since the time of those decisions, New York enacted in 2010 the Wage Theft Prevention Act ("WPTA"). WTPA § 195(3), codified in NYLL, now authorizes a private right of action. *See, e.g., Ayala v. Looks Great Servs., Inc.*, No. 14-cv-

---

[5] For instance, from March 10, 2008, through June 27, 2008, Lopez was paid $543 per week, *see* SOF ¶ 28, which, when divided by 47.5 hours, equals a "straight time" average of $11.43 per hour, well above the minimum wage. Likewise, Belliard's weekly pay was $400, *see* SOF ¶ 48, which equals a straight time average of $8.42 per hour. Plaintiffs make no argument that their pay would still fall short of the federal or state minimum wage if it is assumed that they were not entitled to overtime and were instead paid straight time for 47.5 hours of work per week. Lora, of course, will confront this aspect of Koryeo's wage structure in the resolution of his remaining claims.

16

6035 (ADS) (SIL), 2016 WL 3541548, at *3 (E.D.N.Y. June 23, 2016) ("As part of the WTPA amendments, the Legislature for the first time created a private right of action for employees to recover damages against their employers for failure to provide them with proper wage statements."); *Kone v. Joy Constr. Corp.*, No. 15-cv-1328-LTS, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016) ("A private right of action to recover penalties for violations of Sections 195(1) and 195(3) is provided by Sections 198(1-b) and 198(1-d) of the Labor Law, respectively."). As a result, defendants' motion with respect to this claim is denied.

IV.     Consent Forms of Opt-in Plaintiffs

Defendants argue that Lopez, Espinal and Lora may only assert FLSA claims because they failed to opt in to Belliard's NYLL claims. Defendants assert that "caselaw is clear that opt-in plaintiffs must amend the complaint to add in NYLL claims on their behalf," which is necessary, they contend, because NYLL "does not have a provision for collective actions." Pls. Opp. at 23. (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)). The key question, case law holds, is whether it is clear that plaintiffs who opted in to FLSA claims also "consented to pursuing state law claims." *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 337 (W.D.N.Y. 2014); *see also Marin v. Apple-Metro, Inc.*, No. 12-cv-5274 (ENV) (CLP), 2017 WL 4950009, at *12–13 (E.D.N.Y. Oct. 4, 2017).

On close inspection, there is no real issue here that the language of the opt-in plaintiffs' consent forms clearly indicates that they intended to and did consent to join Belliard in the NYLL claims. As noted on the forms, they opted in to claims "brought pursuant to the Fair Labor Standards Act, *the New York State Labor Law, and the New York Code of Rules and*

17

*Regulations*." Dkt. No. 5 (Espinal consent form) (emphasis added).[6] The forms go on to recite that "[b]y signing below, I state that I . . . [was not] properly compensated for all hours worked or for overtime or spread of hours compensation in accordance with *state and federal law*." *Id.* The only logical conclusion, therefore, is that Lopez, Espinal and Lora intended to opt in to both Belliard's federal and state claims. This case is distinguishable from others where, for instance, the opt-in plaintiffs consented to "become a . . . plaintiff in any Fair Labor Standards Act action of unpaid wages, including overtime wages and/or tip credit violations, and related relief against my employer(s)." *Hicks*, 35 F. Supp. 3d at 337. The opt-in plaintiffs, consequently, are properly joined in Belliard's collective NYLL action.[7]

V. <u>Double Recovery</u>

Defendants' final argument is that, to the extent plaintiffs establish that they are entitled to unpaid wages, they cannot recover "stacked" liquidated damages; in other words, plaintiffs are not entitled to double recovery under both FLSA and NYLL for the same conduct. In making their argument, they rely on a Second Circuit summary order, *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60–61 (2d Cir. 2016) (summary order). That decision considered the legislative history of NYLL and determined that, "whatever reasons existed to award

---

[6] Defendants do not appear to contest whether Lora filed a proper opt-in notice, although the only consent form he filed was a one-page form entirely in Spanish that is markedly different from the other plaintiffs' notices. *See* Dkt. No. 49. Since defendants did not raise this point in their brief, Lora's opt-in, as claimed by plaintiffs, stands to join him to Belliard's NYLL claims.

[7] Because the Court determines that Lopez, Espinal and Lora properly opted in to Belliard's FLSA and NYLL claims, it does not reach the question of whether, in the alternative, plaintiffs should be permitted to amend their complaint, pursuant to Federal Rule of Civil Procedure 15(a). Defendants claim that they "would be severely prejudiced" if plaintiffs were permitted to amend the complaint because the parties would be forced to reopen discovery. *See* Defs. Mem. at 23 n.8; Defs. Reply at 13-15. But the record belies this bald assertion. Plaintiffs counter, credibly, that "full discovery on all of the issues" relevant to both the FLSA and NYLL claims has already occurred. Pls. Opp. at 24. Defendants offered nothing in their reply brief to dispute that.

liquidated damages under the relevant provisions of both the FLSA and the NYLL before 2010, . . . the subsequent amendments to the NYLL . . . eliminated those reasons." *Id.* at 61. Moreover, since *Chowdhury* was issued, courts within this Circuit have concurred that, because FLSA and NYLL now have "nearly identical" liquidated damages provisions, an award of stacked liquidated damages would be illogical. *See Mahoney v. Amekk Corp.*, No. 14-cv-4131 (ENV) (VMS), 2016 WL 6585810, at *14 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted,* No. 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *see also Ming Hui v. Shorty's Seafood Corp.*, No. 15-cv-7295 (RJD) (ST), 2017 WL 5054401, at *8 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted,* 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017); *Gonzalez v. Masters Health Food Serv. Inc.,* No. 14-CV-07603 (VEC), 2017 WL 3835960, at *19 (S.D.N.Y. July 27, 2017); *Changxing Li v. Kai Xiang Dong*, No. 15-CIV-7554 (GBD) (AJP), 2017 WL 892611, at *14 (S.D.N.Y. Mar. 7, 2017), *report and recommendation adopted,* 2017 WL 1194733 (S.D.N.Y. Mar. 31, 2017).

Plaintiffs argue, unpersuasively, that "had the Second Circuit intended for this decision to be binding precedent it certainly would have put its holding in a binding published opinion and not in a nonbinding summary order." Pls. Opp. at 27; *but see Koehler v. Metro. Transportation Auth.*, 214 F. Supp. 3d 171, 175 (E.D.N.Y. 2016) (district court is not "free to disregard" Second Circuit's guidance merely because decision is a non-binding summary order). This Court need not divine why the Second Circuit chose to issue a summary order in *Chowdhury*. The overwhelming weight of authority supports the conclusion that stacked liquidated damages are no longer available to plaintiffs.

## Conclusion

In line with the foregoing, defendants' motion for summary judgment is granted in part

19

and denied in part, as follows:

As to claims one and three, defendants' motion is granted.

As to claims two and four, defendants' motion is granted on Belliard, Espinal and Lopez's claims and denied on Lora's claims.

As to claim five, defendants' motion is denied.

The parties are respectfully referred to Magistrate Judge Steven Tiscione to set up a conference regarding resolution of the remaining claims.

So Ordered.

Dated: Brooklyn, New York
      March 4, 2019

                                  s/ Eric N. Vitaliano
                                ERIC N. VITALIANO
                                United States District Judge